IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| KELVIN ELLIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 13 CV 50205 |
| v. | ) | |
| | ) | Magistrate Judge Iain D. Johnston |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Kelvin Ellis brings this action under 42 U.S.C. § 405(g), seeking reversal and remand of the decision denying him disability insurance benefits. For the reasons set forth below, the case is remanded.

### I. BACKGROUND[1]

On February 1, 2012, the Administrative Law Judge ("ALJ") held a hearing to review the Social Security Administration's denial of Mr. Ellis' request for benefits. R. 29-54. At the time of the hearing, Mr. Ellis was forty-six years old. R. 33. He testified that he had a ninth-grade education, did not have a driver's license, and had difficulty ready and writing. R.33, 37, 46. Mr. Ellis had no past relevant work experience, but testified that chronic pain in his lower back prevented him from working. R. 33-34. Mr. Ellis claimed a disability onset of June 1, 2010. R. 59.

---

[1] The following facts are only an overview. A more complete summary is set forth in the administrative record.

1

On October 12, 2010, Mr. Ellis began treating with Dr. Mehul Gandhi. R. 532. Mr. Ellis sought treatment for his lower back pain after he threw out his back trying to lift a gallon of milk. *Id.* Dr. Gandhi prescribed Tramadol and Flexeril and ordered a magnetic resonance imaging ("MRI") of his lower back. R. 533. On October 19, 2010, Mr. Ellis returned to the doctor after an allergic reaction to the Tramadol. R. 530. Based on Mr. Ellis' low back pain, Dr. Gandhi prescribed Tylenol #3 and recommended that he avoid lifting over 10 pounds, bending, stooping, or standing for long periods of time. R. 508, 530. Starting in November 2010, Mr. Ellis was prescribed Norco to help with his back pain. R. 528.

On October 29, 2010, an MRI on Mr. Ellis' back revealed multilevel degenerative joint and disc disease without central canal stenosis or neural foraminal compromise. R. 515. It also revealed a mild diffuse disc bulge at L5-S1 with mild to moderate facet hypertrophy, which was encroaching upon the traversing S1 nerve roots bilaterally. *Id.* In December 2010, an electromyography ("EMG") revealed motor nerve conduction velocities that were essentially normal. R. 513. However, the EMG also revealed that amplitude of the right common peroneal nerve was low with prolongation of the H-reflect with mild denervation and possible lumbar plexopathy at L5-S1. *Id.*

Examinations by Dr. Gandhi from 2010 through 2012 showed that Mr. Ellis consistently had low back pain, weakness in his lower extremities, and positive straight-leg raising tests. R. 525-533, 558-567, 570, 575-578. But Mr. Ellis had an eight-month lapse in his treatment in 2011. R. 570. On multiple occasions, Mr.

Ellis also reported numbness or tingling in his legs. R. 532, 568, 570. In January 2012, due to Mr. Ellis' chronic low back pain, Dr. Gandhi recommended that he avoid standing for prolonged periods, bending, stooping, crouching, climbing, and lifting over 15 pounds. R. 581.

On February 22, 2012, the ALJ issued his ruling that Mr. Ellis was not disabled. R. 10-28. The ALJ found that Mr. Ellis had the severe impairment of L5-S1 plexopathy. R. 15. However, the ALJ found Mr. Ellis' spinal impairment did not meet or medically equal a listing impairment. R. 16. The ALJ then concluded Mr. Ellis had the residual functional capacity ("RFC") to perform light work subject to the following limitations: no ladders, ropes or scaffolds; only occasional stooping, crouching, crawling, kneeling or balancing; and the need for work learnable on short demonstration, which does not require reading, writing or sum adding. R. 17. Although Mr. Ellis did not have any past relevant work (R. 22), based on the vocational expert's testimony, the ALJ determined that Mr. Ellis' RFC allowed him to perform jobs that existed in the national economy. R. 17-22.

## II. LEGAL STANDARDS

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401

3

(1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

### III. DISCUSSION

Mr. Ellis seeks reversal and remand, arguing that the ALJ: (1) failed to sufficiently explain why Mr. Ellis' impairment did not meet the criteria for disorders of the spine under Listing 1.04(A); and (2) improperly weighed the medical opinion evidence of his treating physician. After reviewing these arguments, the Court finds this case must be remanded.

The criteria for Listing 1.04(A) for disorders of the spine are, in relevant part, "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, §

4

1.04(A). In determining that Mr. Ellis' impairment did not meet these criteria, the ALJ stated that "[a]t times, he has demonstrated positive straight leg raising, but he has not demonstrated sensory or reflex deficits. Motor strength was impaired due to pain, but true muscle weakness/motor loss is not documented or described." R. 16.

Mr. Ellis disputes the ALJ's findings and relies on medical evidence in the record to argue that he has met the required criteria. In particular, Mr. Ellis points to multiple treatment notes, which consistently reported that he had weakness in his lower extremities. R. 525-27, 562-68. Mr. Ellis' EMG also revealed findings consistent with mild denervation and lumbar plexopathy. R. 20, 513. Although the ALJ summarized some of this evidence when determining Mr. Ellis' RFC, he did not address or explain any of it when concluding that Mr. Ellis did not meet the Listing because "true muscle weakness/motor loss is not documented." Moreover, the ALJ offered no support for the conclusion that decreased strength due to pain was not true muscle weakness. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (remanding where the ALJ impermissibly drew medical conclusions without relying on medical evidence); *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (reversing because the ALJ's Listing analysis was "devoid of any analysis that would enable meaningful judicial review."). The medical evidence also indicated a loss of sensation based on numbness in Mr. Ellis' legs. R. 568, 570. Again, the ALJ determined that Mr. Ellis had not demonstrated sensory or reflex deficits, but never addressed the medical evidence indicating otherwise. The ALJ's failure to analyze

5

the medical evidence as it relates to the Listing requirements prevents this Court from determining whether he considered the relevant evidence properly. Therefore, the case must be remanded. *See Scott*, 297 F.3d at 594 (7th Cir.2002) (stating that the court has "repeatedly admonished ALJs to sufficiently articulate [their] assessment of the evidence to assure us that [they] considered the important evidence and ... to enable us to trace the path of [their] reasoning.") (citation and internal quotation marks omitted).

Moreover, remand is also required because the ALJ failed to properly apply the treating physician rule. This rule is based on 20 C.F.R. § 416.927(c)(2). Under this section, a treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with other substantial evidence in the record. *Id.*; *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ cannot simply disregard it without further analysis. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). Instead, the ALJ must determine what specific weight, if any, the opinion should be given. *Moss v. Astrue¸* 555 F.3d 556, 561 (7th Cir. 2009). To make this determination, the ALJ must apply the checklist of factors set forth in 20 C.F.R. § 416.927(c)(2). *Campbell*, 627 F.3d at 308 (referring to the factors as a "required checklist"); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).[2] Failure to

---

[2] The factors are: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)(i)-(ii), (c)(3)-(6).

6

apply checklist is reversible error. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (ALJ disregarded checklist); *Moss*, 555 F.3d at 561 ("the choice to accept one physician's opinions but not the other's was made by the ALJ without any consideration of the factors outlined in the regulations").

Here, in determining Mr. Ellis' RFC, the ALJ rejected the restrictions suggested by Dr. Gandhi. R. 20-21. Before rejecting a treating doctor's opinion, however, the ALJ must first determine whether the medical opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and was "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). The ALJ explained that he did not give Dr. Gandhi's October 19, 2010, opinion significant weight because it was given before an EMG was performed. R. 20-21. The ALJ determined that the EMG performed in December 2010 documented only mildly abnormal findings and did not support Dr. Gandhi's opinion. However, earlier in his summary of the medical evidence, the ALJ admitted that the EMG showed findings consistent with mild denervation and a possible lumbar plexopathy at L5-S1. R. 20. The ALJ also stated that the MRI "performed on October 29, 2010, showed multilevel degenerative joint and disc disease without central canal stenosis or neural forminal compromise. However, he did have mild diffuse disc bulge at L5-S1 with mild to moderate facet hypertrophy, encroaching upon the traversing S1 nerve roots bilaterally." R. 20.

Without a more thorough analysis of this medical evidence in relation to Dr. Gandhi's opinion, the ALJ failed to provide "good reasons" for not affording his

7

opinion significant weight. *See* 20 C.F.R. § 416.927(c)(2) (requiring "good reasons" for the weight given to a treating source's opinion). The ALJ also failed to indicate what weight, if any, he gave the opinion. The ALJ's brief mention of the length of treatment, namely taking issue with the fact that Dr. Gandhi had treated Mr. Ellis for only one week before providing the opinion, made no attempt to discuss other aspects of the regulations used to evaluate a treating physician's opinion under the rule, including the physician's specialties. *See* 20 C.F.R. § 416.927(c)(2).

Additionally, if the length of treatment was the reason for rejecting Dr. Gandhi's restrictions, it seems odd that the ALJ never mentioned similar restrictions that Dr. Gandhi recommended in January 2012. R. 581; *see Thomas v. Astrue*, 769 F. Supp. 2d 1113, 1126 (N.D. Ill. 2011) (stating that "if the ALJ was concerned that [the doctor's] opinion was rendered too early in the treatment, she should have referred to subsequent treatment notes to see if later treatment suggested a change in opinion."). The ALJ rejected Dr. Gandhi's opinion and credited the state agency consulting physician without providing sufficient reasons for his rationale as related to the checklist. This prevents the Court from evaluating whether the RFC assessment is supported by substantial evidence. *See Larson*, 615 F.3d at 751 (reversing for failure to properly apply the treating source factors); *Suide*, 371 Fed. App'x at 690 (requiring the ALJ's RFC determination to be based on substantial evidence). Therefore, the ALJ failed to build a "logical bridge" from the evidence to his conclusion to enable this Court to trace the path of his reasoning. *Roddy v. Astrue*, 705 F. 3d 631, 636 (7th Cir. 2013).

## IV. CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment (Dkt. 13) is granted, and the government's motion (Dkt. 21) is denied. This case is remanded to the Commissioner for further proceedings consistent with this opinion.

Date: January 15, 2015          By:     _____
                                        Iain D. Johnston
                                        United States Magistrate Judge